**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**JAMES V. WALLACE**                                                      **PETITIONER**
**Reg #36156-060**

**VS.**                            **CASE NO.: 2:16-CV-53-JM-BD**

**C.V. RIVERA, Warden,**
**Federal Correctional Complex,**
**Forrest City, Arkansas**                                              **RESPONDENT**

**RECOMMENDED DISPOSITION**

**I.**      **Procedure for Filing Objections**

The following Recommended Disposition ("Recommendation") has been sent to

Judge James M. Moody Jr.  Any party may file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the

objection.  If the objection is to a factual finding, specifically identify that finding and the

evidence that supports your objection.  Your objections must be received in the office of

the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Moody can adopt this Recommendation without

independently reviewing the record.  Failure to file timely objections may result in waiver

of the right to appeal questions of fact.

**II.**      **Introduction**

Petitioner James V. Wallace filed a pro se petition for a writ of habeas corpus

under 28 U.S.C. § 2241.  (Docket entry #1)   In his petition, Mr. Wallace claims a

disciplinary hearing officer ("DHO") enhanced his sanctions as punishment for a disciplinary in violation of Bureau of Prisons ("BOP") policy.  (#1 at p. 7)

Respondent C.V. Rivera contends that Mr. Wallace was given adequate process through the disciplinary hearing procedure, and that the sanctions imposed by the DHO were appropriate.  For the reasons given below, Mr. Wallace's petition for writ of habeas corpus should be dismissed.

### III.   **Background**

Mr. Wallace is currently an inmate at the BOP's Federal Correctional Institution ("FCI-FC"), Forrest City, Arkansas.  He is serving sentences imposed under the Prison Litigation Reform Act ("PLRA").

On August 23, 2010, while an inmate at FCI-FC, Mr. Wallace received an incident report charging him with use of narcotics not prescribed by medical staff.  (#8-1 at p. 22) Mr. Wallace was notified of his rights regarding the disciplinary hearing but declined to have any witnesses or a staff representative present at the hearing. (*Id*. at p. 25)

The DHO began the September 2, 2010 hearing by advising Mr. Wallace of his rights.  (*Id*. at p. 28-30)  Mr. Wallace did not request a staff representative and denied the charges.  (*Id*. at p. 28)  During the hearing, Mr. Wallace stated, "I try to avoid trouble and the sixteenth was my birthday and the guy who gave it to me ratted on me."  He also stated "[t]he report is true." (*Id*.)   Mr. Wallace did not present witnesses.

2

Evidence presented at the hearing revealed that Mr. Wallace tested positive for opiates (morphine), and medical records verified that he had not received any medication from medical staff that would have caused a positive result for opiates. (*Id*.)  The DHO considered Mr. Wallace's statements at the hearing, the incident report and investigation, the memorandum from J. DeWald, the chain of custody form, and the report of National Toxicology Laboratories, Inc.  (*Id*. at p. 29)

The DHO found that Mr. Wallace had committed the prohibited act of using a narcotic not prescribed by medical staff, a code 112 offense.  (*Id*. at p. 30)  The DHO imposed the following sanctions:  disciplinary segregation for 60 days, disallowance of 54 days of good-conduct time, forfeiture of 458 days of non-vested good conduct time, loss of phone privileges for 18 months, loss of visitation privileges for three years, and loss of visitation privileges (no contact) for three years.  (*Id*.)   The DHO gave the following reason for the sanctions imposed:

> Wallace's use of drugs (4th Offense) potentially threatens both the orderly
> running of the facility and the safety of both staff and inmates.  Drug use is
> preceded by the illicit substance being introduced by breeching the secure
> perimeter of the institution.  The purchase of drugs tends to lead to debt and
> drug related debt has great potential to lead to violence in relation to
> payment/non-payment of the same.  Inmates are the target for this violence
> and staff have great potential for injury responding to this violence.
> Further, being under the influence of drugs limits inmate's ability to be
> involved in meaningful correctional programming.  Accordingly,
> Disciplinary Segregation, the Disallowance of Good Conduct Time and the
> Forfeiture of Non Vested Good Conduct Time is sanctioned to punish
> Wallace for his behavior, while the Loss of Privileges (Phone, Visit and
> Visit-NO CONTACT) is used to hopefully deter him from it in the future.

(*Id.*)  Mr. Wallace challenged the action through the administrative appeals process, but his appeals were denied.  (*Id*. at 6, 34)

## IV.  <u>Discussion</u>

To the extent Mr. Wallace claims his due process rights were violated, this claim fails.  A deprivation of good-conduct time implicates a liberty interest protected by the due process clause.  See *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974).  To meet the requirements of due process for a prison disciplinary hearing resulting in the loss of good-time credits, the inmate must receive:  (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.  *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773 (1985).  Additionally, the findings of the prison disciplinary board must be supported by some evidence in the record.  *Id*.

All due process requirements were met in this case.  Mr. Wallace received advanced written notice of the hearing; he had an opportunity to have a staff representative and call witnesses, but declined both; he received a written report from the DHO; and the decision of the DHO was supported by evidence in the record.

Mr. Wallace claims that he was "over-sanctioned" by the DHO in violation of BOP policy.  (#1 at p. 6)  More specifically, he claims that his greatest severity level offense warranted the loss of only 41 days of good-conduct time and argues that he

should not have lost 458 days of non-vested good-conduct time because there were not

"strong mitigating factors." (*Id*. at 7)  As support for his claims, Mr. Wallace cites to

regulations that were not in effect at the time his disciplinary sanctions were imposed.[1]

Under the applicable regulations, loss of good-conduct time was a mandatory

disciplinary sanction for inmates sentenced under the PLRA who had committed a

greatest severity level offense.  28 C.F.R. § 541.13(a)(1) & (table 3) (2010).  Section B1

of Table 3 provided that disallowance should "ordinarily" be between 50% and 75% (27-

41 days) of good conduct time credit available for that year.  Section B1 of Table 3 did

not prohibit, however, a sanction greater than 75% of good-conduct time.

Under Table 4, credit toward an inmate's sentence vested on the date the inmate

was released from custody.  28 C.F.R. §541.13 (table 4(b.1)) (2010).  Accordingly, prior

to release, credit could be disallowed for an inmate found to have committed a prohibited

act.  *Id*.  The DHO was required to consider the severity of the prohibited act and the

suggested disallowance guidelines in making a sanction determination.  Under the

regulations in effect when the DHO sanctioned Mr. Wallace, the DHO was authorized to

"go above the guideline range" for a "greatly aggravated offense or where there is a

repetitive violation of the same prohibited act that occurs within a relatively short time

frame (e.g., within 18 months for the same greatest severity prohibited act, within 12

---

[1]The regulations attached to Mr. Wallace's petition (#1 at pp. 10-13), 28 C.F.R. §§ 541.3 (table 2), 541.4(b)(1), did not become effective until June 20, 2011, several months after Mr. Wallace was sanctioned by the DHO.

months for the same high severity prohibited act, and within 6 months for the same moderate severity prohibited act)."[2] *Id*.

Here, the DHO considered repetitive violations that were within a ten year time-frame. While these violations were outside the 18 month example given in the regulation, the text of the regulation did not specifically prohibit the DHO from considering repetitive violations from outside that time frame. In his opinion, the DHO explained that he was sanctioning Mr. Wallace above the guideline range both because of the seriousness of the current offense and the fact that it was Mr. Wallace's fourth drug-use offense within a ten-year span.[3] The DHO properly exercised his discretion.

As to Mr. Wallace's claim that the DHO was not justified in sanctioning him to the forfeiture of 458 days of good-conduct time, this argument also fails. Under the PLRA, earned good-conduct time does not vest until an inmate is released; thus, all of Mr. Wallace's good-conduct time was eligible for forfeiture on the date of the prohibited conduct. 18 U.S.C. § 3624(b)(2). Under the applicable regulation, the DHO was required to impose and execute one or more of the sanctions A through E of table 3, and sanction

---

[2]The current regulation clarifies the time period within which a prior offense must be committed and the sanction that may be imposed for a repetitive violation. See 28 C.F.R. §541.3 (2011)(limiting the time period for consideration of prior greatest severity offenses to 24 months).

[3]BOP records indicate Mr. Wallace was sanctioned for use of drugs/alcohol (offense code 112) on February 16, 2000, January 29, 2007, and May 31, 2007. (#8-1 at pp. 3, 15-16) Additionally, on March 7, 2001 he was sanctioned for attempting to introduce drugs/alcohol (offense code 111A). (*Id*. at pp. 3-4, 16)

B allowed for the DHO to forfeit up to 100% of the violator's non-vested good-conduct time.  28 C.F.R. § 541.13(a)(1) & (table 3).  Consequently, the sanctions the DHO imposed on Mr. Wallace did not violate the applicable regulation.

Further, even if Mr. Wallace had alleged a violation of a BOP regulation, this fact alone would not amount to a violation of Mr. Wallace's due process rights, because there is no federal due process liberty interest in having prison officials follow prison regulations.  *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003).

## V.   <u>Conclusion</u>

Mr. Wallace's due process rights were not violated in the disciplinary proceeding that resulted in the disallowance of good-conduct time and forfeiture of non-vested good-conduct time.  Therefore, the Court recommends that Mr. Wallace's petition be denied.

DATED this 25th day of July, 2016.


_____
UNITED STATES MAGISTRATE JUDGE